IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sheila Rae Hill, | : | |
| Plaintiff | : | Civil Action 2:07-cv-1289 |
| v. | : | Judge Holschuh |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

Plaintiff Sheila Rae Hill brings this action under 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff maintains that she became disabled at age 17 by depression, mood swings and anxiety. The administrative law judge found that Hill is not disabled because she retains the ability to perform unskilled work that does not require more than superficial contact with supervisors, co-workers or the general public. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge's decision was not supported by substantial evidence;

- The administrative law judge failed to accord any weight to and did not even mention Hill's GAF scores;
- The evidence of record does not establish that Hill can perform any work that is available in significant numbers in the national or regional economy given her lack of past relevant work and her psychological impairments.

**Procedural History.** Plaintiff Sheila R. Hill filed her application for disability insurance benefits on August 1, 2004, alleging that she became disabled on September 1, 2003, at age 17, by anxiety, low self-esteem, depression, and bipolar disorder. (R. 47, 53.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On April 10, 2007, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 673.) A vocational expert and a medical advisor also testified. On May 15, 2007, the administrative law judge issued a decision finding that Hill was not disabled within the meaning of the Act. (R. 24.) On October 18, 2007, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 4-6.)

**Age, Education, and Work Experience.** Sheila Rae Hill was born July 14, 1986. (R. 47.) She has a high school education. (R. 58.) She has worked at a few odd jobs such as shoveling snow, cutting grass, and babysitting. (R. 689-90.) For purposes of determining disability, Hill has no prior work experience.

**Plaintiff's Testimony.**

Hill testified that she graduated from high school where she earned mostly A's, B's, and C's. She lives alone in an apartment. Since graduating from high school in June 2004, Hill has not sought regular employment. She has done some little jobs for people. She assisted an elderly woman who lived next door for about a month. Hill had difficulty being around people, and she was easily frustrated. On occasion, she shoveled snow and cut the grass for people to earn money. Hill testified that she wanted to go to college, but she did not have any money to pay for the ACT test.

Hill believed that she would not be able to perform housekeeping at a hotel because of back problems and arthritis in her knees. She believed she could pack ten bowling pins into a box for shipping.

Hill continued to smoke despite having asthma and being told that she should quit. She was treated at the emergency room for inhaling mold. She has used her inhaler two to three times per week. She has had bad headaches two or three times a week. When she has a headache, she cannot not do anything else. The medication for her headaches makes her high and she would rather not be addicted to it. At times, the medication has not relieved her headache. Her ankle has hurt all the time.

Hill attempted to suicide when she was in high school. She had been depressed. She hated being on the bus every day and being at school. She hated the people at the school, and they hated her.

Hill testified that she did not want to be "stuck at some menial job like McDonald's or something because I know I can't do it." (R. 696.) She did not believe that she could handle the stress of a job at a fast food restaurant and that she was not equipped to deal with people. She believed that she could probably lift ten pounds.

Hill was concerned that working could cause her to have another nervous breakdown. She was afraid she might kill herself. (R. 687-704.)

Hill's mother, Lisa Shaw, also testified at the administrative hearing. Ms. Shaw testified that either she or her husband brought Hill to their house everyday. Hill ate and slept at their house until it was time for her to return home. Hill slept during the day because she could not sleep at night. (R. 707.) Hill took Xanax for bipolar depression and anxiety. Hill exhibited attention-seeking behavior. (R. 709.)

Ms. Shaw indicated that Hill was afraid to drive and did not believe that she had ability to do so. Ms. Shaw testified that they pay Hill's bills and care for her. She assisted her daughter with obtaining a section 8 apartment and food stamps. (R. 712-13.) Ms. Shaw said her daughter was not based in reality and could not take responsibility for herself. She had difficulty being around other people and did not take criticism well. She believed that everyone hated her and was thinking about her.

Ms. Shaw had observed her skipping through the house like she was a five year old. Other times, Hill cried for no reason. (R. 714-15.) She believed that her daughter was very bright. (R. 716.) Her mother also stated that plaintiff had difficulty maintaining her personal hygiene and performing household tasks. (R. 720.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. Nonetheless, this Report and Recommendation will summarize that evidence in some detail.

**Physical Impairments.**

Genesis-Bethesda Hospital. On December 20, 2002, a CT of the head showed normal size and alignment of the ventricular structures. (R. 468.)

Hill was treated at the emergency room for numerous complaints. On March 5, 2004, Hill was treated for bronchitis. (R. 79-84.) On July 30, 2004, she was also treated for bronchitis. (R. 86-90.) On August 5, 2004, she was treated for bronchiolitis. (R. 91-95.) On September 4, 2004, Hill injured her ankle by shutting it in the car door. (R. 97-101.) On September 25, 2004, Hill lacerated her right elbow while helping her friends move. (R. 103-06.)

On October 20, 2004, Hill complained of pain in her right calf with swelling. She also had shoulder pain and difficulty focusing on things. (R. 108-11.). On January 24, 2005, Hill was treated at the emergency room for a headache. (R. 116-19.) On January 25, 2005, plaintiff presented at the emergency room complaining of a headache and nausea. (R. 112-15.) It was noted that Hill appeared comfortable and that she was sitting cross-legged on a cart reading a book. (R. 113.)

On February 15, 2005, Hill presented with complaints of dizziness and nausea. (R. 120-28.) On February 22, 2005, Hill injured her finger. (R. 129-34.) On February 24, 2005, plaintiff was treated for a yeast infection. (R. 135-41.) On April 15, 2005, she was

5

treated for a sinus infection. (R. 142-49.) On May 10, 2005, Hill complained of possible food poisoning. (R. 150-59.)

On June 3, 2005, Hill was treated fro a headache with nausea and dizziness. (R. 160-68.) On June 10, 2005, Hill was treated for a skunk bite. (R. 171-77.)

On July 20, 2005, Hill complained of feeling dizzy and short of breath. She felt as through her blood was "rushing out of her arms." (R. 201.) On August 2, 2005, plaintiff was evaluated for asthma, chest pain, and shortness of breath. (R. 208-15.) On August 18, 2005, Hill was treated for a virus. (R. 219-26.) On August 25, 2005, Hill complained of a migraine. (R. 228-34.) On October 17, 2005, Hill was treated for complaints of a headache, sore throat, and abdomen pain. (R. 236-41.)

On January 6, 2006, Hill complained of a stuffed up nose and a headache. (R. 248-54.) On February 22, 2006, Hill was treated for a cough, sore throat, head and chest congestion, fever, upset stomach, and headache. (R. 256.) On June 17, 2006, plaintiff complained of being bitten by ants. (R. 264.) On June 24, 2006, Hill presented at the emergency room with complaints of a headache. (R. 243-46.) On July 16, 2006, plaintiff complained of chest pain, cough, and a headache. (R. 275.)

On September 10, 2006, Hill reported that she had injured her right arm. (R. 289.) On December 4, 2006, Hill was treated for a migraine. (R. 301.) On 3, 2007, plaintiff complained of asthma and feeling as though she was straining to take a breath. (R. 312.) On January 13, 2007, plaintiff complained of diarrhea and dehydration. (R. 319.) On

March 6, 2007, Hill was treated for a headache. (R. 328.) On March 8, 2007, she complained of vomiting. (R. 335.)

<u>Jeffrey Williams, D.O.</u> On April 2, 2001, Dr. Williams, a primary care physician, began treating plaintiff. (R. 470-94.)

<u>Robert J. Thompson, M.D.</u> On September 8, 2004, Dr. Thompson, a neurologist, examined plaintiff based on her complaints of headaches. (R. 355-56.) Hill reported that she recently experienced a change in they type of headaches she had. Her headaches were unilateral and constant. Light and sound did not have any effect on her, and she did not have nausea. She had some blurred vision. Her sinuses hurt. Imitrex, Flexeril, and Ultram had no effect. Based on her age and weight, Dr. Thompson was concerned about the possibility of pseudotumor cerebri. He recommended an executive profile and an MRI scan of the brain. (R. 356.)

On September 14, 2004, plaintiff had normal brain MRI study. (R. 350.)

**Psychological Impairments.**

<u>Genesis Healthcare System Psychiatric Center</u>. On September 5, 2002, Hill was admitted to the hospital for psychiatric problems. (R. 74-77.) In the emergency room evaluation, Hill stated that life was not worth living and that she felt worthless. She did not like school. The principal told her that she had to remove her eyebrow ring, which made her angry. When she got home, she cut her wrist. Hill reported difficulty sleeping, with sleep onset and mid cycle awakenings. She also reported appetite disturbances. (R. 74.)

Hill complained of having panic attacks, depression, and mood swings. She was alert, oriented, and able to perform basic attention and concentration tests. Her mood was labile with flat affect. She was frequently irritable and angry. (R. 75.)

At discharge, Hill was diagnosed with cyclothymia. On Axis V, the discharge summary stated "40% at the time of discharge." (R. 435.) The final report, however, listed Axis V at 35%. (R. 440.)

In July 2003, Hill had not taken one of her psychotrophic medications for 6 months. (R. 521.) The psychiatrist prescribed Abilify and weekly counseling. (R. 522.) In August 2003, the Abilify had stabilized Hill's mood, but it made her tired. In October 2003, her mood was good, and she was talkative about a relationship with a boy friend. (R. 526.) In November 2003, Hill reported no panic attacks. She became depressed when she did not take her psychotrophic medications or when she suffered disappointments. (R. 513.)

In March 2004, Hill was very composed. But her mother said her daughter was having bad mood swings. (R. 515.) In July 2004, plaintiff remained in remission on her medications, but she was irregularly attending outpatient therapy. (R. 415.)

<u>Thompkins Child & Adolescent Services, Inc.</u>  On September 11, 2002, Ms. Jane Given performed an individual diagnostic assessment. (R. 421-26.) Plaintiff reported having a depressed mood. She had decreased sleep with frequent nighttime awakenings. She experienced psychomotor agitation. She felt worthless when she was depressed. She had recurrent thoughts of death. (R. 422.)

Hill reported that she had too many friends to count, but that most of her friends were just acquaintances. On mental status, she was oriented in three spheres. Her recent and remote memory was good. Her fund of knowledge was somewhat limited. Her attention and concentration were good. (R. 425.) Ms. Given summarized the assessment as follows:

> The client reportedly having periods of significant depression and periods of irritability and impulsive behaviors. She reported the depression involves decrease[d] sleep, a feeling like she is falling in a black hole and not being able to get out. She has a loss of interest in valued activities. She has had suicidal thoughts and a suicidal gesture. Some anxiety, post traumatic stress disorder symptomology including avoiding stimuli that remind her of the rape when she was 13 years old. She has intrusive thoughts when reminded of the event and hypervigilance. She was hospitalized at Bethesda last week for cutting her left wrist with a razor (superficial). Bi-Polar Disorder apparently prominent on maternal side of the family. Three or four years ago the client had a concussion and has had headaches since then on occasions.

(R. 426.)

On December 16, 2002, Hill underwent a psychiatric evaluation. Hill reported recent difficulty with mood swings, depression, increased irritability, insomnia, hypervigilance, and poor concentration. Hill met the diagnostic criteria for oppositional defiant disorder. She reported depression, lack of interest, hypersomnia and episodes of insomnia. She felt fatigued and had poor concentration. She experienced psychomotor agitation and retardation. She had recurrent thoughts of death. She also experienced manic symptoms, including grandiosity, pushed speech, flight of ideas, and increased distractibility.

She felt anxious most of the time. She experienced shortness of breath, feelings of palpation, and choking. She also complained of dizziness, derealization and depersonalization. (R. 417.) Hill had good school attendance, and her grades were A's and B's. (R. 418.)

On mental status examination, Hill was oriented to person, place, time, and situation. Her immediate memory was intact. Her attention and concentration were fair. Hill was clearly depressed, which affected her motivation. Her affect was congruent. (R. 419.) Hill was diagnosed with bipolar disorder, type II, currently depressed without psychotic features and post-traumatic stress disorder, chronic. Hill was given a rule out diagnosis of bipolar disorder, mixed, rapid cycling without psychotic features. Hill was assigned a current GAF score of 50. Her highest GAF score in the past year was 70, and the lowest was 30. (R. 420.)

Six County, Inc. In August 2004, Hill started counseling at Six County. She said that she had applied for SSI to help her mother. The diagnosis was bipolar disease. Her GAF was 50. (R. 374-75.) By the end of August, Hill was feeling much better on her new medications. (R. 364.) She was making plans to attend college. (R. 373.) On January 26, 2005, Hill was seen at Six County, Inc. (R. 607-08.) She reported having three anxiety attacks in the past week. She had recently stopped taking her medications. (R. 607.) She experienced an increase in her heart rate and shortness of breath. She also had begun having headaches again. In May 2005, Hill's anxiety was under control. (R. 609.) On June 13, 2005, Hill reported that she was not sure if her medications were providing

10

her any relief. She reported continued moodiness. She only used Xanax as needed. (R. 610.) Her mood improved during the session when she began discussing a book that she had recently enjoyed reading. (R. 610.)

On February 9, 2006, Danine Lajiness-Polosky, MN, CNP evaluated plaintiff. Although Hill had good eye contact, Lajiness-Polosky stated that "it felt like she was staring through me." (R. 611.) She was diagnosed with bipolar I disorder. **(R. 611.)** Hill denied any suicidal or homicidal ideation. A September 25, 2006 note indicated that Hill was alert and oriented in three spheres. She was "doing really well." (R. 612.) She was pleasant and cooperative. Her mood and affect were a bit brighter. She reported problems with her memory. Her insight and judgment were poor. Hill reported ongoing moodiness. (R. 612.)

There is no evidence of psychological treatment from September 2006 through the April 2007 date of the hearing before the administrative law judge.

<u>Keli A. Yee, Psy.D.</u> On September 23, 2004, Dr. Yee, a psychologist, completed a disability assessment report. (R. 388-95.) Plaintiff reported that she was diagnosed with bipolar disorder in 2002. She was prescribed Risperdal, Topamax. Allegra D, and an Albuterol inhaler. She received mental health treatment from a doctor at Six County, Inc. (R. 388.)

Hill reported difficulty with depression "all the time, every day" prior to treatment. (R. 389.) She also experienced situational anxiety. *Id.* She reported that she enjoyed art and playing the guitar. She socialized occasionally with friends and her

11

boyfriend. (R. 390.) She walked every night and did chores during the day. She cooked a couple of times a week. She bathed and changed clothes daily.

On mental status examination, Hill's mood was depressed with constricted affect. She denied suicidal ideation, although she reported self-injurious cutting in the past. She experienced explosive outbursts at a frequency of 3-4 times a day. She had decreased energy, appetite, sleep, memory, and concentration. Hill also reported manic-like symptoms, including impulsivity and self-injurious behavior. She was oriented in three spheres. Her speech was flowing, relevant, goal-directed, and coherent. Hill reported that she heard a phone ringing and her name being called; she denied any other auditory or visual hallucinations. She denied paranoid ideation, and there was no evidence of psychosis. (R. 392.)

Her immediate memory retained simple tasks, and her long term memory was intact. Her general fund of knowledge and her ability to abstract were considered average. (R. 393.)

Dr. Yee diagnosed bipolar I disorder, most recent episode unspecified and personality disorder, not otherwise specified with borderline features. Dr. Yee assigned a Global Assessment of Functioning ("GAF") score of 55. Dr. Yee indicated that Hill had a long history of problems getting along with other people and that she might have difficulty working with others. Dr. Yee concluded that she was moderately impaired with respect to relating to co-workers and supervisors and dealing with the public. (R. 394.)

Guy G. Melvin, Ph.D. On October 20, 2004, Dr. Melvin completed a psychiatric review technique. (R. 396-413.) John S. Waddell, Ph.D. reviewed all the evidence of record and affirmed the conclusions of Dr. Melvin. (R. 396.)

Dr. Melvin concluded that Hill had bipolar disorder, type II. (R. 399.) Dr. Melvin found no restriction of activities of daily living or episodes of decompensation. Dr. Melvin concluded that Hill exhibited mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.(R. 406.)

Dr. Melvin also completed a mental residual functional capacity assessment. With respect to understanding and memory, Dr. Melvin concluded that Hill was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence she was moderately limited in her abilities to carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 410-11.) With respect to social interaction, Dr. Melvin found moderate limitations in her abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. With respect to adaptation, Hill was moderately limited in her ability to respond appropriately to changes in the work setting. (R. 411.)

**Administrative Law Judge's Findings.**

1. The claimant has not engaged in substantial gainful activity since September 1, 2003, the alleged onset date (20 CFR 416.920(b) and 416. 971 *et seq*.).

2. The medical evidence establishes that the claimant has bi-polar disorder and migraine headaches. These medically determinable impairments cause significant limitations in the claimant's work related functioning and are, therefore, severe within the meaning of the Regulations (20 CFR 416.920(c)).

3. Based on objective medical evidence in the record and the DDS reviewers (Exhibit 3F), I conclude that the claimant does not have an impairment or combination of impairments that meet or medically equal the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4, specifically when considered under Listings(s) 11.02 and 11.03 (20 CFR 416.920(d), 416.925 and 416.926). Additionally, when considered in conjunction with her/his [sic] other impairments the claimant's obesity does not satisfy the requirements of any listed impairment.

4. After careful consideration of the entire record, I find that the evidence of record as a whole supports a finding that the claimant retains the residual functional capacity to perform the exertional and nonexertional requirements of work, except for that more exertionally demanding than simple, unskilled work, with no more than superficial contact with supervisors, co-workers, and the general public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July 14, 1986 and was 18 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416/960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 1, 2004, the date the application was filed (20 CFR 416.920(g)).

(R. 17-23.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge's decision was not supported by substantial evidence</u>. Instead, plaintiff argues that based on her lack of any prior work experience, the evidence establishes that she is unable to engage in substantial gainful activity.

- <u>The administrative law judge failed to accord any weight or reference Hill's GAF scores</u>. The highest GAF score in the record was 55, as provided in Dr. Yee's assessment. The earlier assessment of Dr. Given indicated GAF scores ranging from 30 to 51. Plaintiff argues that the administrative law judge erred by not even discussing the GAF scores of plaintiff.

- <u>The evidence of record does not establish that the plaintiff can perform any work that is available in significant numbers in the national or regional economy giver her lack of past relevant work and her psychological impairments</u>.

**Analysis.** Plaintiff argues that the opinion of the administrative law judge is not supported by substantial evidence. The administrative law judge relied on the opinions of the DDS reviewers. (R. 18.) Drs. Melvin and Waddell concluded that Hill could understand simple instructions, work at a steady pace to sustain simple tasks, and work in situations where the duties relatively static. (R. 412.) Dr. Yee's opinion supports the residual functional capacity formulated by the administrative law judge. Importantly,

as noted by the Commissioner, none of the doctors opined that Hill was disabled. Finally, in her testimony, Hill acknowledged that she could probably perfrom a job in which she sat down by herself, put bowling pins in boxes, and shipped them to bowling alleys. (R. 691.)

Hill also argues that the administrative law judge erred by not discussing her GAF scores. Hill's alleged onset date was September 1, 2003, and her lowest GAF scores were documented in 2002. After the alleged onset date, plaintiff was given GAF scores 50 **and 55.** (R. 375, 393.) Although a GAF score may be of considerable help to formulating the residual functional capacity, the failure of the administrative law judge to reference the GAF score in the residual functional capacity, standing alone, does not make it inaccurate. *Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

The administrative law judge properly considered Hill's mental impairment by assessing her functional limitations using the four criteria in paragraph B of the Listings: activities of daily living, social functioning' concentration, persistence, or pace; and episodes of decompensation. With respect to activities of daily living, the administrative law judge noted that Hill was able to care for her personal care and grooming and performed household chores. (R. 21.) With respect to social functioning, the administrative law judge stated that the evidence indicated that she could interact independently, appropriately, and effectively on a sustained basis with other individuals. *Id.* The administrative law judge concluded that Hill had the ability to sustain focused attention and concentration because her hobbies included reading,

17

painting, and watching television. Finally, the administrative law judge noted that plaintiff had not experienced repeated episodes of decompensation. Consequently, there is substantial evidence in the record supporting the administrative law judge's conclusion that there was no evidence that Hill's bipolar disorder impacted her functioning to such a degree that she was disabled.

The administrative law judge relied on the testimony of the vocational expert for evidence that were a significant number of jobs that Hill could perform. Plaintiff has not argued that the hypothetical question posed to the vocational expert was not an accurate reflection of her residual functional capacity. Hill's assertion that the evidence of record does not establish that she can perform any work that is available in significant numbers in the national economy or regional economy given her lack of past relevant work and her psychological impairments, without more, is insufficient.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in

question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel
United States Magistrate Judge